# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANTHONY ACCURSO, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 19-2540 (CKK) |
| FEDERAL BUREAU OF INVESTIGATION, | : |
| Defendant. | : |

## MEMORANDUM OPINION

Plaintiff Anthony Accurso brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the Federal Bureau of Investigation ("FBI" or "defendant"), a component of the U.S. Department of Justice. Before the Court is Defendant's Motion for Summary Judgment (ECF No. 18). For the reasons discussed below, the Court GRANTS the motion.[1]

---

[1] The Court considered the following documents and all their exhibits/attachments:

* Complaint (ECF No. 1, "Compl.")
* Defendant's Motion for Summary Judgment (ECF No. 18), particularly the Statement of Material Facts Not In Genuine Dispute (ECF No. 18-1, "SMF"), Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment (ECF No. 18-2, "Def.'s Mem.") and the Declaration of Michael G. Seidel (ECF No. 18-3, "Seidel Decl.")
* Plaintiff's Motion in Opposition to Summary Judgment (ECF No. 20, "Pl.'s Opp'n")
* Defendant's Reply in Support of Motion for Summary Judgment (ECF No. 22, "Reply"), including the Amended Vaughn Index (ECF No. 22 at 10-17)
* Plaintiff's Reply (ECF No. 23, "Pl.'s Surreply")

1

**I. BACKGROUND**

"On January 13, [2014], Plaintiff Anthony Accurso pled guilty to Count 1 of the Indictment, charging him with a violation of 18 U.S.C. § 2252(a)(2), for distribution of child pornography over the internet, in the U.S. District Court for the Western District of Missouri." SMF ¶ 1; *see* Def.'s Mem., Ex. 2 (Judgment in a Criminal Case) at 1 (ECF No. 18-4 at 17). The facts underlying the offense were outlined in the Plea Agreement:

> On April 29, 2011, a detective with the Platte County Sheriff's Office conducted an investigation of individuals sharing child pornography through internet file sharing programs. The detective's attention was drawn to a particular IP address later identified to . . . Anthony Accurso. On that same date on three separate occasions, the detective downloaded images that met the definition of child pornography pursuant to 18 U.S.C. § 2256 . . . .
>
> On September 26, officers executed a search warrant at [plaintiff's] residence in Gladstone, [Missouri]. When officers arrived, they located [plaintiff] in the basement typing on his mobile phone. [Plaintiff] disregarded law enforcement directives to put down the device and show officers his hands. [plaintiff] finally stopped typing on the mobile phone and tossed it aside. Upon examination of the mobile phone it was discovered that [plaintiff] was trying to remotely erase files on his hard drive, but miss-typed [sic] the file path.
>
> During the course of the search, numerous electronic items were seized. The forensic examination revealed over 15,000 images and 72 videos meeting the definition of child pornography pursuant to 18 U.S.C. § 2256. A substantial number of these images were located on the hard drives of [plaintiff's] home-built computer . . . .

Def.'s Mem., Ex. 1 (Plea Agreement) ¶ 3 (ECF No. 18-4 at 2). Plaintiff is serving a 180-month term of incarceration, SMF ¶ 2, and has been designated to the Federal Correctional Institution in Seagoville, Texas, *see* Compl. ¶ 3.

In June 2019, plaintiff submitted a FOIA request to the FBI for records related to the investigation leading to his criminal prosecution. *See* SMF ¶ 3. Specifically, plaintiff sought:

2

1) Records relating to the investigation . . . which resulted in criminal case # 13-06008-01-CR-SJ-HFS in the Western District of Missouri.
2) Records relating to the search warrant (its application, the supporting affidavit, and completed and signed warrant) which was served on my residence on September 26, 2011 in relation to the above-listed case.
3) Records relating to the actions taken by law enforcement during the execution of the search warrant listed in item #2 and any reports generated as part of the execution of that warrant.
4) The analysis (including lists of filenames and corresponding hashes of any files identified as possible, probable, or actual child sex abuses images) of the hard disk drives conducted by the FBI or any of its agents or contracted third parties in relation to the above-listed case.

Seidel Decl., Ex. A (ECF No. 18-3 at 24).

The FBI assigned the matter a tracking number (1439909-000), SMF ¶ 4, and located 150 pages of responsive records at its Kansas City Field Office, *id.* ¶ 7; Seidel Decl. ¶ 22. It released one page in full, released 53 pages in part, and withheld 96 pages in full. SMF ¶ 7.

## II. DISCUSSION

### A. Summary Judgment in a FOIA Case

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, . . . together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted). The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id*. at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

When considering a motion for summary judgment under FOIA, the Court must conduct a de novo review of the record.  *See* 5 U.S.C. § 552(a)(4)(B).  The Court may grant summary judgment based on information provided in an agency's affidavits or declarations when they are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted), and "not controverted by either contrary evidence in the record [or] by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."
 *Servs.*, 926 F.2d at 1200 (citation and internal quotation marks omitted).

### B. The FBI's Search for Responsive Records

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted).  "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  The Court may rely on an agency's "reasonably detailed [declarations], setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials

4

(if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)) (internal quotation marks omitted).

The FBI's declarant set forth a detailed explanation of the agency's recordkeeping systems, the organization of information within these systems, and the scope and method of FBI's search for records responsive to plaintiff's FOIA request.  *See generally* Seidel Decl. ¶¶ 9-23.  Based on plaintiff's representation that the FBI "had conducted digital analysis of information in connection with the investigation into [his] criminal activities" in Missouri, FBI staff "determined the Kansas City Field Office ('KCFO') would be the location most likely to maintain potentially responsive records."  *Id.* ¶ 22.  KFCO staff used that office's "own internal agency case number, 02-11-0152, to locate and provide [150 pages of responsive] records[.]" *Id.*; *see id.* ¶ 26.  Plaintiff has not challenged FBI's search in any way, and on review of FBI's supporting declaration, the Court concludes that the agency conducted a search reasonably calculated to locate records responsive to plaintiff's FOIA request.

**C. Exemption 7**

**1. Law Enforcement Records**

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), but only to the extent that disclosure of such records would cause an enumerated harm, *see FBI v. Abramson*, 456 U.S. 615, 622 (1982).  "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or

violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

The declarant describes the FBI as "the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States." Seidel Decl. ¶ 30. FBI also may assist "state, local, and tribal enforcement agencies in the investigation of matters that may involve federal crimes or threats to the national security, or for such other purposes as may be legally authorized." *Id.* ¶ 31 (citation and internal quotation marks omitted).

Here, the declarant explains, the FBI "assisted the Platte County, Missouri, Sheriff's Office by conducting a forensic examination of Anthony Accurso's electronic devices in connection with his potential violation of 18 U.S.C. § 2252(a)(2), Distribution of Child Pornography Over the Internet." *Id.*; *see id.* ¶ 25. He represents that the "FBI compiled the records at issue pursuant to its assistance to a law enforcement function," *id.* ¶ 25, that is, providing assistance to a local law enforcement agency, *see id.* ¶¶ 25, 31. Thus, FBI easily meets its burden to establish that all the records responsive to plaintiff's FOIA request were compiled for law enforcement purposes and fall within the scope of Exemption 7.

### 2. Third Parties and Exemption 7(C)[2]

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to particular information, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), we must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect.") (internal quotation marks and citation omitted). When balancing the private interest against the public interest in disclosure, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

The FBI relies on Exemption 7(C) to withhold the names of and identifying information about Heart of America Regional Computer Forensics Laboratory staff and task force officers, *see* Seidel Decl. ¶ 36, local law enforcement personnel, *see id.* ¶ 38, third party victims, *see id.* ¶

---

[2] The FBI relies on both Exemption 6 and Exemption 7(C) to protect the same third-party information. *See* Seidel Decl. ¶ 33 n.5. But the Court need not consider whether Exemption 6 applies in this case. All the responsive records were compiled for law enforcement purposes, and therefore the Court addresses only whether the FBI justifies its decision under Exemption 7(C). *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (concluding that, where "all documents responsive to [plaintiff's FOIA] requests . . . were compiled for law enforcement purposes," the court "focus[es] on Exemption 7(C) rather than Exemption 6 since it is the broader of the two").

39, and third parties merely mentioned in the responsive records, *see id.* ¶ 40.[3]  Its declarant states that disclosure of the third parties' identities would constitute an unwarranted invasion of their personal privacy and that no public interest outweighs their privacy interest.  *See* Seidel Decl. ¶¶ 37-40.  Nor would disclosure "increase the public's understanding of the FBI's operations and activities."  *Id.* ¶ 37; *see id.* ¶¶ 38-40.

Plaintiff does not object to the FBI's decision to withhold names of and identifying information about Heart of America Regional Computer Forensics Laboratory staff and task force officers, local law enforcement personnel, and third parties merely mentioned in the responsive records.  And he "has no problem with the redaction of actual victim names," Pl.'s Surreply at 7, from pages 48-49 of the responsive records, *see* Amended Vaughn Index at 2 (page number designated by defendant).[4]  In these respects, the Court treats the FBI's arguments as conceded.  *See, e.g., Ford v. Dep't of Justice*, 208 F. Supp. 3d 237, 251 (D.D.C. 2016) (treating as conceded the FBI's arguments where plaintiff "fails even to mention the . . . third parties whose identities the FBI protects"), *appeal dismissed*, 664 F. App'x 9 (D.C. Cir. Nov. 9, 2006).  However, plaintiff questions the declarant's assertion that the FBI "withheld just enough

---

[3]  The declarant explains that the Heart of America Regional Computer Forensics Laboratory "fosters a partnership between the FBI and other federal, state, and local law enforcement agencies operating a regional, digital forensic task force. The laboratories provide forensic services and expertise to support law enforcement agencies in collecting and examining digital evidence for a wide range of investigations, including child pornography, terrorism, violent crime, and fraud." Seidel Decl. ¶ 36 n.7 (citation and internal quotation marks omitted).

[4]  Plaintiff identified, *see* Pl.'s Opp'n at 3-4, and defendant corrected, *see* Reply at 2, an error in the Vaughn Index, *see* Seidel Decl., Ex. D (ECF No. 18-3) at 2 (page number designated by defendant).  The original Vaughn Index did not reflect that information on pages 47, 50-51, and 55-62 had been withheld under Exemption 7(E) in addition to Exemptions 6 and 7(C), and the Amended Vaughn Index corrected the error, *see* Amended Vaughn Index at 2 (ECF No. 22 at 12).

8

information under [Exemption 7(C)] to satisfy its requirements under the law." Pl.'s Opp'n at 12.

Plaintiff's argument presumes that the FBI is withholding filenames appearing in the responsive records because the filenames themselves incorporate victims' names. If the FBI's forensic examiners found over 15,000 images of child pornography, plaintiff thinks it "unlikely that the entirety of the list of filenames is contained on those two pages." *Id*. at 10. He posits that FBI improperly relies on Exemption 7(E), not Exemption 7(C), "to justify withholding of file names and info hashes of files identified as actual or suspected child pornography," when it is unlikely that an offender would incorporate a victim's name into a filename. *Id.* "If the victims are easily identified, then producers [of child pornography] are similarly easily identifiable, resulting in prosecution." *Id.* Further, plaintiff notes, a filename is "not necessarily descriptive of a file's contents," *id.*, and if a filename includes a person's name, it likely is pseudonym assigned "to a victim for the purpose of cataloging abuse images together," *id.* at 11; *see* Pl.'s Surreply at 4-6. Therefore, because filenames would not incorporate a victim's true name, *see* Pl.'s Opp'n at 7-12, "release cannot reasonably implicate the privacy interest of victims," Pl.'s Surreply at 10.

Plaintiff also disputes defendant's assertion that no public interest outweighs the victims' privacy interests, arguing that a collateral attack on his sentence qualifies. *See* Pl.'s Surreply at 8. "If the Agency falsified evidence or its claims about evidence to support [his] conviction . . . , such perjury would be illegal." *Id.* at 9. And, plaintiff contends, the FBI "either . . . is lying to the court now, or it was lying to the court in 2013" when he was charged. *Id.* Neither response has merit.

9

The plain language of the declaration indicates that FBI withholds only "the names of third party victims." Seidel Decl. ¶ 39. It makes no mention of filenames, and nothing in the record of this case establishes that filenames and victims' names are the same. Crime victims certainly have a cognizable privacy interest that the FBI rightfully acknowledges. *See Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (recognizing D.C. Circuit "decisions [which] have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants"); *Fabiano v. McIntyre*, 146 F. App'x 549, 550 (3d Cir. 2005) (per curiam) (affirming district court decision protecting names of victims in child pornography photographs); *Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990) ("Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." (citation and internal quotation marks omitted)).

Plaintiff might overcome the victims' privacy interest if he could provide "compelling evidence that the agency denying the FOIA request is engaged in illegal activity." *Computer Professionals for Social Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 905 (D.C. Cir. 1996) (quoting *Davis*, 968 F.2d at 1282). His interest in challenging his criminal conviction does not suffice, however, as a "personal stake in using the requested records to attack his conviction[] does not count in the calculation of the public interest." *Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated and remanded*, 541 U.S. 970 (2004), *on remand*, 378 F.3d 1115 (D.C. Cir. 2004) (reaffirming prior decision), *cert. denied*, 544 U.S. 983 (2005); *Engelking v. DEA*, 119 F.3d 980, 980-81 (D.C. Cir. 1997) (per curiam) ("To the extent [the appellant] argues that he seeks exculpatory information, [his] personal need for information

10

is immaterial to whether that information is protected from disclosure by one of the exemptions to the FOIA."). His unsupported assertion that governmental misconduct may have occurred in the course of his criminal case does not "demonstrate 'that the public interest sought to be advanced is a significant one,' and that release of the requested information 'is likely to advance that interest.'" *Pugh v. FBI*, 793 F. Supp. 2d 226, 232 (D.D.C. 2011) (quoting *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 172 (2004)).

"As a general rule, third-party identifying information contained in [law enforcement] records is 'categorically exempt' from disclosure." *Lazaridis v. U.S. Dep't of State*, 934 F. Supp. 2d 21, 38 (D.D.C. 2013) (quoting *Nation Magazine v. U.S. Customs Serv*., 71 F.3d 885, 896 (D.C. Cir. 1995)); *see Blackwell*, 646 F.3d at 41 ("As a result of Exemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information."). Based on the declarant's descriptions of and reasons for withholding all the third party information, *see generally* Seidel Decl. ¶¶ 36-40, and absent a meaningful opposition from plaintiff, the Court concludes that FBI adequately justifies its reliance on Exemption 7(C).

### 3. CART Reports and Data and Exemption 7(E)

Exemption 7(E) protects information in records compiled for law enforcement purposes if its release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]" 5 U.S.C. § 552(b)(7)(E). "The requirement that records 'would disclose techniques and procedures for law enforcement investigations or prosecutions' . . . is met, inter alia, where a record would disclose details about a law enforcement technique or procedure itself . . . or would disclose information

11

regarding 'when . . . agencies are likely to employ' certain techniques or procedures[.]" *Sheridan v. U.S. Office of Personnel Mgmt.*, 278 F. Supp. 3d 11, 19 (D.D.C. 2017) (citing *Sack v. U.S. Dep't of Defense*, 823 F.3d 687, 694 (D.C. Cir. 2016) and *Blackwell*, 646 F.3d at 42).  This first clause "provides categorical protection, requiring no demonstration of harm or balancing of interests." *Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border Prot.*, No. 04-CV-00377, 2006 WL 1826185, at *7 (D.D.C. June 30, 2006) (citation and internal quotation marks omitted).  The exemption's second clause "encompasses a broader range of information, but requires an assessment of whether disclosure poses a reasonable risk that the law could be circumvented." *Id.* (citing *PHE, Inc. v. U.S. Dep't of Justice*, 983 F.2d 248, 252 (D.C. Cir. 1993)).  This requires that the agency surpass "a relatively low bar," such that it need "only . . . demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).  As is the case with any other FOIA exemption, "[t]he burden is on the agency to justify withholding the requested documents [under Exemption 7(E)], and the FOIA directs district courts to determine *de novo* whether non-disclosure was permissible." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015) (citations omitted).

      The FBI invokes Exemption 7(E) to protect "non-public investigative techniques and procedures . . . and . . . non-public details about techniques and procedures that are otherwise known to the public."  Seidel Decl. ¶ 43.  The responsive records are Computer Analysis Response Team ("CART") reports and data "resulting from the FBI's analysis of digital media collected by the Platte County Sheriff's Office concerning [p]laintiff's activities in violation of 18 U.S.C. § 2252(a)(2), Distribution of Child Pornography." *Id.* ¶ 44.  The declarant explains:

> FBI's CART provides digital forensics, technical capabilities, and related services and support to the FBI, intelligence organizations, and other law enforcement agencies. CART provides support to investigations that are reliant, in whole or in part, upon digital evidence, namely through the acquisition, preservation, examination, processing, and presentation of digital information stored in computers or other electronic devices or media. CART analyzes a variety of digital media, including but not limited to, desktop and laptop computers, Compact Disks ("CDs")/Digital Video Disks ("DVDs"), cell phones, digital cameras, digital media players, flash media, and other digital media storage devices.

*Id.* Here, the FBI withholds "specific investigative tools, techniques, examiner notes, and forensic examination reports conducted on [plaintiff's] electronic devices, in order to avoid unnecessarily exposing sensitive FBI technical capabilities." *Id.*

"[D]etailed information about CART software, equipment, techniques, procedures, and/or types of reports generated by CART during [its] forensic testing processes" is protected for two reasons. *Id.* First, the declarant asserts, release would harm the agency's "effectiveness in investigating crimes where evidence can be found on computers and other digital media." *Id.* Second, release "would . . . aid in circumvention of the law by providing criminals the information necessary for them to adjust behavior in order to avoid detection, develop and/or utilize technology less susceptible to law enforcement detection or scrutiny, and/or use or develop technology to counteract techniques used by CART." *Id.*

### a. Recovery of Files

Plaintiff responds that the FBI improperly applies Exemption 7(E) because certain of the information withheld is public already. *See* Pl.'s Opp'n at 4. According to plaintiff, "[i]t is well established that . . . forensic examinations include a review of files on . . . devices under examination, and that such a review also includes files which may be located in deleted space." *Id.*; *see id.* at 5. He opines that "[t]he agent performing evaluation of [his] devices also likely used hash values to confirm that at least some of [the] images/videos [on the devices] were

13

known to be child pornography," and states that "[h]ash values are available to law enforcement agencies via the Child Online Protection System . . . database." *Id.* at 5.  In addition, plaintiff asserts that "programs for detecting child pornography on peer-to-peer networks has been available to the public" for several years.  *Id.* at 6.  For these reasons, plaintiff argues that "any references to the use of software to recover actual or suspected child pornography . . . and the use of such software to locate and download child pornography from suspected distributors via peer-to-peer networks cannot be exempted . . . because these tools and methods are clearly in the public record."  *Id.*  Similarly, plaintiff argues that the FBI cannot withhold "lists of the processes performed by CART as part of its examination" from pages 5-8 of the responsive records" because such processes are already made public."  *Id.* at 7.  In support of his position, plaintiff cites criminal cases in other jurisdictions, *see id.* at 5-6, none of which, as defendant explains, *see* Def.'s Reply at 3 n.2, pertain to disclosures under FOIA.

That forensic examination involves the retrieval of files and the use of software for this purpose may be public knowledge.  What FBI withholds, however, is information *not* known to the public.  *See* Seidel Decl. ¶ 43.  Plaintiff can only speculate about that the software, techniques, and procedures CART employed during its examination is known to the public, and his mere speculation as to the content of these records cannot overcome the presumption of good faith accorded to the FBI's declaration or defendant's showing on summary judgment.  *See SafeCard Servs.*, 926 F.2d at 1200; *see also Hastie v. Henderson*, 121 F. Supp. 2d 72, 77 (D.D.C. 2000), *aff'd*, No. 00-5423, 2001 WL 793715 (D.C. Cir. 2001) ("To defeat a motion for summary judgment, a plaintiff cannot create a factual issue of pretext with mere allegations or personal speculation, but rather must point to 'genuine issues of material fact in the record.'").

14

### b. Electronic Devices Examined

Next, plaintiff objects to the redaction of information on page 2 of the responsive records in a section titled "Specimens." *See* Pl.'s Opp'n at 7. Plaintiff presumes that this section "refers to the electronic devices seized during execution of the search warrant on [p]laintiff's home," and concludes that this information must be released because the Plea Agreement, which is publicly available, lists all of the devices seized from his home. *Id.*; *see* Def.'s Mem., Ex. 1 ¶ 3. Again plaintiff offers mere speculation as to the contents of the "Specimens" section, and without evidence to support his assertion, plaintiff cannot withstand defendant's showing.

### c. Victims' Names and Filenames

Plaintiff contends that the FBI wrongfully withholds under Exemption 7(E) the "filenames and info hashes of the files identified as actual or suspected pornography." Pl.'s Opp'n at 10. Neither the FBI's declaration nor Vaughn Index expressly mentions "filenames," yet plaintiff proceeds on the assumption that disclosure of a filename also discloses the name of or describes a child victim. *See id.* at 9. Plaintiff misreads the declaration. As discussed above, and as plaintiff concedes, victims' names properly are withheld under Exemption 7(C).

On review of defendant's submission, the Court concludes that the FBI properly relies on Exemption 7(E) to withhold non-public details about CART software, equipment, techniques, procedures and reports generated during its forensic examination of plaintiff's electronic devices. *See Blackwell*, 646 F.3d at 42 (holding that "details about procedures used during the forensic examination of a computer by an FBI forensic examiner. . . are undoubtedly 'techniques' or 'procedures' used for 'law enforcement investigations'" (internal quotation marks and citation omitted)); *Gatson v. FBI*, No. 15-CV-5068, 2017 WL 3783696, at *15 (D.N.J. Aug. 31, 2017) (concluding that FBI properly withheld "detailed requests, reports, notes, and/or data resulting

15

from the FBI's analysis of computer and other digital media seized pursuant to search warrants and/or subpoenas" under Exemption 7(E)), *aff'd*, 779 F. App'x 112 (3d Cir. 2019); *Passmore v. Dep't of Justice*, 245 F. Supp. 3d 191, 204 (D.D.C. 2017) (concluding "FBI properly has withheld CART data under Exemption 7(E)"), *aff'd sub nom. Passmore v. U.S. Dep't of Justice*, No. 17-5083, 2017 WL 4231167 (D.C. Cir. Sept. 13, 2017), *cert. denied*, 138 S. Ct. 1269 (2018).

### D. Segregability

"[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)); 5 U.S.C. § 552(b). An agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (citation omitted). The FBI meets its burden here by adequately describing the information withheld, *see* Seidel Decl. ¶¶ 36-40, 44, and averring that all reasonably segregable material has been released, *see id.* ¶ 45.

## III. CONCLUSION

The Court concludes that the FBI conducted a reasonable search for records responsive to plaintiff's FOIA request, that it adequately justified its decisions to withhold information under Exemptions 7(C) and 7(E), and that it released all reasonably segregable information. Accordingly, the Court grants defendant's motion for summary judgment. An Order is issued separately.

DATE: February 5, 2021        /s/
                                          COLLEEN KOLLAR-KOTELLY
                                          United States District Judge